UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| BRENDA ANDRUS,<br>    Plaintiff | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-1112 |
| UNUM LIFE INSURANCE<br>COMPANY OF AMERICA,<br>    Defendant | SECTION: "E" (1) |

## ORDER AND REASONS

Before the Court is Defendant Unum Life Insurance Company of America's motion for partial summary judgment that the group long-term disability policy at issue is subject to ERISA.[1] The Plaintiff opposes the motion, arguing the Opelousas General Health System is a governmental entity exempt from ERISA.[2] For the reasons below, the motion for partial summary judgment is **DENIED**.

## BACKGROUND

The Plaintiff, Brenda Andrus, worked as a case manager at Opelousas General Hospital.[3] The Defendant, Unum Life Insurance Company of America ("Unum") issued a group long-term disability policy to employees of Opelousas General Health System ("the Plan.")[4] The Plaintiff alleges she suffers from a number of medical conditions that prevent her from continuing to work, and that she is disabled under the terms of the Plan.[5] Unum denies the Plaintiff is eligible for long-term disability benefits. The Plaintiff also alleges her medical condition qualifies her for waiver of life insurance premium benefits under the Plan's terms. The Plaintiff seeks penalties against Unum under the Louisiana

---

[1] R. Doc. 20.
[2] R. Doc. 21.
[3] R. Doc. 1 at 2.
[4] R. Doc. 20-2 at 2; *id.* at 12–51.
[5] R. Doc. 1 at 2.

1

Insurance Code, alleging Unum's failure to pay her claims is arbitrary and capricious.[6] Plaintiff also brings a state-law claim for emotional distress.

Unum seeks judgment as a matter of law that the Plan is an ERISA plan and that, as a result, the Plaintiff's state-law claims are preempted, the evidence is constrained to the administrative record, discovery is limited, and the matter may not be submitted to a jury.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "An issue is material if its resolution could affect the outcome of the action."[8] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[9] All reasonable inferences are drawn in favor of the nonmoving party.[10] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[11]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[12] If the

---

bibliography
[6] R. Doc. 1 at 3.
[7] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[8] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[9] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[10] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[11] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[12] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[13]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[14] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[15] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving

---

[13] *Celotex*, 477 U.S. at 322–24.
[14] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[15] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

party."[16] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[17] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[18] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[19]

## LAW AND ANALYSIS

The Plaintiff seeks to recover from Unum benefits allegedly due to her under the Plan. In its motion, Unum seeks a determination that the Plan is governed by ERISA section 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B).[20] In response, the Plaintiff argues the Plan is exempt from ERISA pursuant to 29 U.S.C. § 1003(b)(1), which expressly excludes government plans.

It is undisputed that the Opelousas General Hospital System obtained the group long-term disability policy for its eligible employees from Unum.[21] The material facts surrounding the creation of OGHS also are undisputed.

---

[16] *Celotex*, 477 U.S. at 332–33.
[17] *Id.*
[18] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[19] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.
[20] *See McCall v. Burlington N./Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000) ("When a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under § 502(a)(1)(B) of ERISA rather than a fiduciary claim brought pursuant to § 502(a)(3).").
[21] R. Doc. 20-2

4

In 1953, the St. Landry Parish Police Jury, now known as the St. Landry Parish Council,[22] created the Hospital Service District No. 2, which is a political subdivision of the State of Louisiana.[23] The Hospital Service District No. 2 is statutorily authorized to enter into an agreement with a third party for the third party to manage and operate a hospital for the benefit of the service district.[24] On September 21, 1954, the citizens of Opelousas voted to pass a one-mill ad valorem tax for 20 years to pay for part of the hospital construction.[25] Pursuant to its statutory authority, the Hospital Service District No. 2 entered into a lease agreement with the Hospital Corporation of the Sisters of Marianites of the Holy Cross for it to operate the newly constructed hospital.[26] In 1971, the Hospital Service District No. 2 submitted another bond proposal to fund the expansion of the hospital, but the proposal was defeated by the voters.[27] In response, a number of members of the Board of Commissioners of the Hospital Service District No. 2 created a public trust—Opelousas General Hospital Authority d/b/a Opelousas General Hospital System ("OGHS").[28] The Hospital Service District No. 2 is the beneficiary of the public trust. Pursuant to the Trust Indenture, the five Commissioners for the Hospital Service District No. 2 serve as five of the nine Trustees of OGHS.[29]

Because the Court finds the material facts in this matter not to be in dispute, the Court will determine whether Unum is entitled to judgment as a matter of law that Plaintiff's long-term disability plan is an ERISA plan.

---

[22] The Court will refer to the St. Landry Parish Police Jury by its current name, the "Parish Council."
[23] R. Doc. 20-5; *Bertrand v. Sandoz*, 255 So. 2d 754, 755 (La. 1971).
[24] LA. REV. STAT. ANN. § 46:1055.
[25] *Bertrand*, 255 So. 2d at 756.
[26] *Id.*
[27] *Id.*
[28] *Id.* at 757.
[29] *Bertrand*, 255 So. 2d at 758.

ERISA comprehensively regulates employee benefit plans.[30] If a participant in an employee benefit plan could have brought her claim under ERISA, ERISA completely preempts her other causes of action.[31] Whether a participant could have brought her suit under ERISA turns on whether the plan is an "ERISA plan."[32] Although ERISA's scope is expansive, certain types of employee benefit plans are excluded from coverage.

Title 29, United States Code, Section 1003(b)(1) provides that ERISA "shall not" apply to any employee benefit plan if such a plan is a "governmental plan."[33] ERISA defines a "governmental plan" as "[a] plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of the foregoing."[34]

The Court must therefore determine whether OGHS, which established and now maintains the Plaintiff's long-term disability plan, is (1) a political subdivision of the State of Louisiana, or (2) an agency or instrumentality of a political subdivision of the State of Louisiana. If OGHS is either a political subdivision of the State of Louisiana or an agency or instrumentality of a political subdivision of the State of Louisiana, the employee benefit plan it established and maintains is a "governmental plan" exempt from ERISA.

I. **Political Subdivision**

The Court will first examine whether OGHS is a political subdivision of the State of Louisiana. ERISA does not define the term "political subdivision."[35] For the purpose of

---

[30] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).
[31] *Id.* at 209–10.
[32] *Hanson v. Continental Ins. Co.*, 940 F.2d 971, 976 (5th Cir. 1991).
[33] 29 U.S.C. § 1003(b)(1).
[34] 29 U.S.C. § 1002(32). There is no statutory language in ERISA that defines the terms "political subdivision," "agency" or "instrumentality."
[35] *Smith*, 2015 WL 6442337 at *7 (E.D. La. Oct. 23, 2015) (citing *Koval v. Wash. Cnty. Redevelopment Auth.*, 574 F.3d 238, 240 (3d Cir. 2009)).

discerning whether an entity is a political subdivision under ERISA, the Fifth Circuit has adopted the *Hawkins* test formulated by the Supreme Court in *NLRB v. Natural Gas Utility District of Hawkins County*.[36] Under the *Hawkins* test, an entity is a political subdivision if it is either "(1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate."[37]

The Plaintiff need only establish that OGHS fits the definition of a political subdivision under one prong or the other of the *Hawkins* test. The Court will first address the second prong, whether OGHS is "administered by individuals who are responsible to public officials or to the general electorate."[38]

Unum argues OGHS is not a political subdivision because it "is not administered by individuals who are responsible to public officials or to the general public."[39] Unum further contends the members of the Board of Trustees of OGHS are all individual citizens serving in their private capacities.[40] The Plaintiff, on the other hand, argues there is little difference between the administration of the Hospital Service District No. 2, which the parties agree is a political subdivision of the State of Louisiana, and OGHS.[41] To determine whether OGHS is administered by individuals who are responsible to public officials or the general electorate, the Court will examine OGHS's governance structure.

---

[36] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016); 402 U.S. 600 (1971).
[37] *Smith*, 827 F.3d at 417 (quoting *Hawkins Cnty.*, 402 U.S. at 604–05).
[38] *Hawkins Cnty.*, 402 U.S. at 604–05.
[39] R. Doc. 20-1 at 21.
[40] *Id.* at 24.
[41] R. Doc. 21 at 13.

7

The governing body of St. Landry Parish is the St. Landry Parish Council ("Parish Council").[42] The publicly elected members of the Parish Council appoint five Commissioners to the Commission of the Hospital Service District No. 2.[43] These five Commissioners of the Hospital Service District No. 2 are a majority of the Trustees on the Board of Trustees of OGHS.[44] The original Trust Indenture states "the Trustees of this Trust shall be . . . the persons presently constituting the members of the governing Commission of the [Hospital Service District No. 2]."[45] The Amended Trust Indenture increased the number of Trustees of OGHS to nine, but these additional Trustees also are appointed by the Commissioners of the Hospital Service District No. 2.[46] The only limitation on the appointments by the Hospital Service District No. 2 is the additional four Trustees must be residents of St. Landry Parish.[47] The Trust Indenture provides that officers of the Commission and OGHS are identical.[48]

---

[42] *See* ST. LANDRY PARISH, *Home Rule Charter*, *available at* http://stlandryparish.org/government/home-rule-charter.
[43] R. Doc. 20-5 at 1. The members of the Commission of the Hospital Service District No. 2 are appointed by the St. Landry Parish Council. LA. REV. STAT. ANN. § 46:1053(A) ("Any hospital service district formed or created under the provisions of this Chapter shall be governed by a board of five commissioners, hereafter referred to as commission, who shall be qualified voters and residents of the district. The commission shall be appointed by the police jury of the parish."). It is undisputed that both the St. Landry Parish Council and the Hospital Service District No. 2 are political subdivisions of the State of Louisiana. R. Doc. 20-11 at 3, ¶¶ 12–13; R. Doc. 21-1 at 4, ¶¶ 12–13; LA. REV. STAT. ANN. § 46:1055.
[44] R. Doc. 21-3 at 1, ¶ 6. The Trust Indenture provides "[t]he Trustees of this Trust shall be the same persons who are the Chairman and members of the governing body (Commission) of the Hospital Service District No. 2, and shall remain as Trustees until such person or persons shall have been succeeded and replaced by some other person or persons as Chairman and members of the governing body (Commission) of the Hospital Service District No. 2, and such latter person or persons shall without any further act or deed automatically become Trustees of this Trust." R. Doc. 21-2 at 4. Each of the Trustees of OGHS is required to "take the oath of office required of public officials." LA. REV. STAT. ANN. § 9:2343(A)(1).
[45] R. Doc. 21-2 at 3–4.
[46] R. Doc. 21-5.
[47] R. Doc. 21-5 at 2 ("The Trustees who shall constitute the Board of Trustees of the Trust shall be appointed by the governing body of the Beneficiary . . . ."); *id*. at 3 ("The governing body of the Beneficiary shall appoint four (4) additional Trustees.").
[48] R. Doc. 21-2 at 4–5 ("The person who shall be the Chairman of the governing body (Commission) of the Hospital Service District No. 2, shall become automatically the Chairman of the Trustees and shall preside at all meetings and perform other duties designated by the Trustees. The person who shall be the Vice Chairman of the Hospital Service District No. 2 shall be automatically the Vice Chairman of the Trustees . . . . The person who shall be the Secretary of the Hospital Service District No. 2 shall act as Secretary of the Trustees.").

The Commission of the Hospital Service District No. 2, as the governing authority of the beneficiary of the Trust, has the power remove a Trustee of OGHS for cause.[49] The Board of Trustees of OGHS is required to adopt bylaws, but the bylaws must be submitted to the "governing authority of the beneficiary"—in this case, the Commission of Hospital Service District No. 2.[50] The Commission has the power to veto OGHS's bylaws or any proposed changes to its bylaws.[51] The Trust Indenture was required to be approved by the Commission of the Hospital Service District No. 2 and by the Louisiana State Bond Commission.[52] Amendments to the Trust Indenture also must be approved by the Commission of the Hospital Service District No. 2 and by the Louisiana State Bond Commission.[53] In sum, neither OGHS's bylaws nor its Trust Indenture may be changed without the consent of the Commission of the Hospital Service District No. 2, which is appointed by the Parish Council.

The Court finds that OGHS is administered by individuals who are responsible to public officials, namely the Commissioners of the Hospital Service District No. 2, which

---

[49] LA. REV. STAT. ANN. § 9:2343(F)(3) ("In the case of persons appointed by the governing authority of the beneficiary or by the governor, as the case may be, such persons shall be appointed for a term not in excess of six years, and shall be subject to removal for cause, as aforesaid, by or at the will of the beneficiary.").
[50] LA. REV. STAT. ANN. § 9:2341(C).
[51] *Id.* "[T]he governing authority of the beneficiary shall have the power to veto all or part of the proposed bylaws." The Court notes that all meetings of the Board of Trustees of OGHS are open to the public, and the minutes of each meeting are public record to the same extent required by law for the beneficiary—Hospital Service District No. 2. LA. REV. STAT. ANN. § 19:2342(D) ("Meetings of the trustees of all public trusts shall be open to the public and the records of all public trusts shall be public records to the same extent as is required by law for the beneficiary."). Books, records, and minutes of each OGHS Board of Trustees meeting are considered public records and are available for inspection by the legislative auditor or any accountant or official representative of the St. Landry Parish Council. R. Doc. 21-2 at 5.
[52] LA. REV. STAT. ANN. § 9:2341(A) (A public trust may be created with the "(1) express approval of the governor and two-thirds of the elected members of each house of the legislature if the state of Louisiana or any state agency is the beneficiary; (2) express approval of a *majority of the membership of the governing authority of the beneficiary and the State Bond Commission* or its successor if a parish or municipality or a political or governmental subdivision thereof is the beneficiary; and (3) express approval of a majority of the membership of the governing authority of the beneficiary and the State Bond Commission or its successor, in all other cases." (emphasis added)).
[53] *See* R. Doc. 21-6 at 5, Section 3.

is a political subdivision. The Commissioners of the Hospital Service District No. 2 are responsible to the Parish Council, which also is a political subdivision. OGHS is a political subdivision of the State of Louisiana for the purposes of ERISA because it is "administered by individuals who are responsible to public officials or the general electorate."[54]

Because the Court finds OGHS is a political subdivision of the State of Louisiana, the employee benefit plan established and maintained by OGHS is a "governmental plan," which is exempt from ERISA coverage pursuant to 29 U.S.C. § 1003(b)(1).[55]

II. **Agency or Instrumentality**

Alternatively, if OGHS is not itself a political subdivision of the State of Louisiana, the Plaintiff's plan may nevertheless be a governmental plan exempt from ERISA if OGHS is an agency or instrumentality of the Hospital Service District No. 2, a political subdivision of the State of Louisiana. ERISA does not define "agency or instrumentality"

---

[54] *Hawkins*, 4002 U.S. at 604–05. Both OGHS and the State of Louisiana treat OGHS as a governmental entity. First, OGHS completed a Client Information Form in connection with its application for a long-term disability plan with Unum, which indicated OGHS is exempt from ERISA. R. Doc. 20-2 at 6. The Court—not the benefit plan—determines whether ERISA applies. *Stern v. IBM Corp.*, 326 F.3d 1367 (11th Cir. 2003) (an employer's labeling of a plan does not determine whether it is an ERISA plan). Although OGHS's labeling is not dispositive of whether the Plaintiff's plan is an ERISA plan, the Court finds it telling that OGHS considers itself exempt from ERISA and has not submitted the Form 5500 annual report with the Secretary of Labor, as required by ERISA for all ERISA plans. R. Doc. 21-3. Second, the 2015 legislative audit of OGHS states "The Opelousas General Hospital Authority (the "Hospital") was created under the laws of the State of Louisiana pursuant to a Trust Indenture executed . . . for the benefit of the [Hospital Service] District [No. 2] and is a public instrumentality of the State of Louisiana." LOUISIANA LEGISLATIVE AUDITOR, *Hospital Service District No. 2 of St. Landry Parish, Louisiana and Opelousas General Hospital Authority, Financial Report* (Jun. 30, 2015), *available at* https:// app.lla.state.la.us/PublicReports.nsf/05802C0CCCEC002E862580E2006C4718/$FILE/00012B98.pdf. Third, OGHS—as a public trust—is exempt from state and federal taxes, and the property of the Trust is considered public property. LA. REV. STAT. ANN. § 9:2347(M) ("The property of any public trust . . . is hereby declared to be public property used for essential public and governmental purposes. . . . [S]uch public trust, and all of its properties at any time owned by it and the income therefrom and all bonds issued by it and the income therefrom, shall be exempt from all taxes of the parish or municipality, the state, or any political subdivision thereof or any other taxing body."). Finally, all meetings of the Board of Trustees of OGHS are open to the public, and the minutes of each meeting are public record to the same extent required by law for the beneficiary—Hospital Service District No. 2. LA. REV. STAT. ANN. § 19:2342(D) ("Meetings of the trustees of all public trusts shall be open to the public and the records of all public trusts shall be public records to the same extent as is required by law for the beneficiary.").

[55] Because OGHS need only meet one prong of the *Hawkins* test for the Court to make a finding that OGHS is a political subdivision for the purposes of ERISA, the Court will not consider whether OGHS was created directly by the state, so as to constitute a department or administrative arm of the government.

for the purposes of determining whether a plan is exempt as a governmental plan.[56] The Fifth Circuit has adopted the six-factor test provided in Internal Revenue Service Revenue Ruling 57-128, as refined by Internal Revenue Service Revenue Ruling 89-49, as the appropriate test for determining whether an entity is an agency or instrumentality of a governmental entity.[57] In Revenue Ruling 57-128, the IRS set forth the following six factors to be considered in determining whether a particular entity is an agency or instrumentality of a state or political subdivision:

> (1) whether it is used for a governmental purpose and performs a governmental function; (2) whether performance of its function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the organization is vested in public authority or authorities; (5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and (6) the degree of financial autonomy and the source of its operating expenses.[58]

Revenue Ruling 89-49 refined Revenue Rule 57-128, stating:

> One of the most important factors to be considered in determining whether an organization is an agency or instrumentality of the United States or any state or political subdivision is the degree of control that the federal or state government has over the organization's everyday operations. Other factors include: (1) whether there is specific legislation creating the organization; (2) the source of funds for the organization; (3) the manner in which the organization's trustees or operating board are selected; and (4) whether the applicable governmental unit considers the employees of the organization to be employees of the applicable governmental unit. Although all of the above factors are considered in determining whether an organization is an agency of a government, the mere satisfaction of one or all of the factors is not necessarily determinative.[59]

---

[56] *Smith*, 827 F.3d at 417–18.
[57] *Id.* at 420.
[58] Rev. Rul. 57-128, 1957-1 C.B. 311.
[59] Rev. Rul. 89-49, 1989-1 C.B. 117.

The Court must consider the factors provided in these Revenue Rulings to determine whether OGHS is either an agency or instrumentality of the Hospital Service District No. 2.

First, OGHS was created "for the public purposes hereinafter set forth as a public instrumentality of the state or a subdivision or agency thereof, under the provisions of Act. No. 135, 1970, [Louisiana Revised Statutes] 9:2341, et seq."[60] Louisiana's public trust statute states that a public trust may be created "to issue obligations and to provide funds for the furtherance and accomplishment of any authorized public functions"[61] such as "hospital, medical, health, nursery care, nursing care, clinical, ambulance, laboratory and related services and entities."[62] The Court finds Unum's argument that providing hospital services is not a "traditional government function" unpersuasive.[63] Louisiana's public trust statute expressly provides that a public trust may be created for the "public function" of administering hospital and medical services. Accordingly, the Court finds this factor weighs in favor of finding OGHS is an agency or instrumentality of the Hospital Service District No. 2, a political subdivision of the State of Louisiana.

Second, OGHS performs its functions on behalf of the Hospital Service District No. 2, a political subdivision of Louisiana. Pursuant to the Trust Indenture, the Hospital Service District No. 2 is the beneficiary of the public trust, and is the owner of the hospital. OGHS provides the day-to-day operations of the hospital, but the hospital exists "for the use and benefit" of the Hospital Service District No. 2.[64] This factor weighs in favor of

---

[60] R. Doc. 21-2 at 1.
[61] LA. REV. STAT. ANN. § 9:2341(A).
[62] LA. REV. STAT. ANN. § 9:2341(B)(1)(a).
[63] R. Doc. 20-1.
[64] R. Doc. 21-2 at 1.

finding OGHS is an agency or instrumentality of the Hospital Service District No. 2, a political subdivision of the State of Louisiana.

Third, although there are private interests involved, as the members of the Board of Trustees serve in their capacities as citizens of St. Landry Parish, the Hospital Service District No. 2 has the powers and interests of an owner. Although OGHS runs the day-to-day operations of the hospital, the Hospital Service District No. 2 is the owner. The January 25, 1972 Resolution of Hospital Service District No. 2 transferred the management and supervision of the Opelousas General Hospital to "the Opelousas General Hospital Authority, a Public Trust, . . . pursuant to the terms and conditions of a Management Contract executed by and between the Hospital Service District No. 2 of St. Landry Parish, Louisiana, *as Owner* and the Opelousas General Hospital Authority, a Public Trust, as Manager."[65] Further, as discussed above, the Hospital Service District No. 2 has the power to appoint and remove members of the OGHS Board of Trustees, a majority of whom are Commissioners of the Hospital Service District No. 2. This factor weighs in favor of finding OGHS is an agency or instrumentality of the Hospital Service District No. 2, a political subdivision of the State of Louisiana.

Consideration of the fourth factor—whether control and supervision of the organization is vested in public authority—is highly contested by the parties, as there are facts that support both arguments. On the one hand, neither the St. Landry Parish Council nor the Hospital Service District No. 2 controls the finances or day-to-day operations of the hospital. OGHS generates its own funding, hires its own employees, and provides its

---

[65] R. Doc. 21-7 at 1 (emphasis added). Further, the statutory purpose of the Hospital Service District No. 2 is "to own and operate hospitals." LA. REV. STAT. ANN. § 46:1052.

own benefits.[66] The Trust Indenture provides the Hospital Service District No. 2 has no "authority, power or right, whatsoever, to do or transact any business for, or on behalf of, or binding upon the Trustees or upon the Trust Estate."[67] On the other hand, as discussed above, the Board of Trustees, which conducts the affairs of the OGHS, is appointed by the Hospital Service District No. 2. Five of the nine Trustees are Commissioners of the Hospital Service District No. 2, who are appointed by the St. Landry Parish Council. In reality, control of OGHS is vested the Hospital Service District No. 2 as the Commission controls the governing board of OGHS. This factor weighs in favor of finding OGHS is an agency or instrumentality of the Hospital Service District No. 2, a political subdivision of the State of Louisiana.

The fifth factor directs the Court to consider whether express or implied statutory authority is necessary "for the creation and/or use of . . . an instrumentality."[68] The statute governing the Hospital Service District No. 2 authorizes it "to enter into lease agreements with recognized and duly constituted nonprofit associations which are primarily engaged in the operation of hospitals,"[69] such as OGHS. Although no special act of the legislature brought OGHS into existence, the *use* of OGHS to manage, operate, and administer a hospital is legislatively authorized.[70] This factor weighs in favor of finding OGHS is an agency or instrumentality of the Hospital Service District No. 2, a political subdivision of the State of Louisiana.

---

[66] The parties agree that employees of OGHS are not employees of the Hospital Service District No. 2 or the Parish Council.
[67] R. Doc. 21-2 at 11.
[68] Rev. Rul. 57-128, 1957-1 C.B. 311.
[69] LA. REV. STAT. ANN. § 46:1055(A)(9).
[70] *Id.* at § 1055(B) ("[T]he commission may enter into a special services agreement with any person, including but not limited to a hospital management firm or hospitals, to manage, operate, and administer a hospital or hospitals, or any part thereof, under the control of the commission for the benefit of the hospital service district.").

The sixth factor—degree of financial autonomy—weighs against OGHS being an agency or instrumentality of a political subdivision. Under the terms of the Trust Indenture, all debts of OGHS are payable solely from the Trust Estate.[71] The Trust Indenture provides the Hospital Service District No. 2, as beneficiary, "shall have no liability for any bonds, notes, or indebtedness of any type whatsoever of the Trust" and will have no "liability for costs incurred in the operation of the Trust, or for any actions or omission of the Trustees or others representing the Trust."[72] Further, the Hospital Service District No. 2 has "no legal title, claim or right to the Trust Estate, its income, or to any part thereof, or to demand or require any partition or distribution thereof."[73] The Court finds OGHS to be financially autonomous with respect to the Hospital Service District No. 2, and this factor weighs against finding OGHS is an agency or instrumentality of a political subdivision.

Examining the factors to be considered in determining whether an entity is an agent or instrumentality of a state or political subdivision, the Court concludes that OGHS is an agency or instrumentality of the Hospital Service District No. 2, which is a political subdivision of the State of Louisiana.[74] Therefore, the Court finds the Plaintiff's plan is a governmental plan exempt from ERISA's coverage pursuant to 29 U.S.C. § 1003(b)(1).[75]

Accordingly;

---

[71] R. Doc. 21-2 at 11.
[72] R. Doc. 21-2 at 11.
[73] R. Doc. 21-2 at 11.
[74] The Court recognizes that Revenue Ruling 89-49 refined Revenue Ruling 57-128 by stating the "control" factor is the most important. The Court has given due weight to this factor in its analysis.
[75] Although the Court lacks federal question subject matter jurisdiction because of the finding that ERISA does not apply, the Court maintains subject matter jurisdiction over this matter because the parties are diverse. Accordingly, this matter will remain on the Court's docket, the Court will apply Louisiana law, and the Plaintiff is entitled to a jury trial.

## CONCLUSION

**IT IS ORDERED** that the motion for partial summary judgment filed by Unum Life Insurance Company of America is **DENIED**.

**New Orleans, Louisiana, this 31st day of May, 2017.**

                      */s/ Susie Morgan*
                  **SUSIE MORGAN**
      **UNITED STATES DISTRICT JUDGE**